# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

KRISTYN P.,[1]

    Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.

Civ. No. 1:18-cv-00819-AA

OPINION & ORDER

AIKEN, District Judge:

Plaintiff Kristyn P. seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner"). The decision of the Commissioner is REVERSED and REMANDED for further proceedings.

## BACKGROUND

On February 25, 2014, Plaintiff filed an application for supplemental security income alleging disability beginning May 25, 2008.[2] Tr. 16. The claims were denied initially and upon reconsideration. *Id.* At Plaintiff's request, a hearing was held before an administrative law judge ("ALJ") on January 30, 2017. *Id.* On February 24, 2017, the ALJ issued a decision finding Plaintiff not disabled. Tr. 30. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Tr. 1. This appeal followed.

---

[1] In the interest of privacy, this opinion uses only first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

[2] The alleged onset date is prior to the date of an unfavorable determination on an earlier disability application filed by Plaintiff. Tr. 16. The ALJ assumed and denied an implied request to reopen the prior unfavorable determination. *Id.*

Page 1 – OPINION & ORDER

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r*, 648 F.3d 721, 724 (9th Cir. 2011).

> The five-steps are: (1) Is the claimant presently working in a substantially gainful activity? (2) Is the claimant's impairment severe? (3) Does the impairment meet or equal one of a list of specific impairments described in the regulations? (4) Is the claimant able to perform any work that he or she has done in the past? and (5) Are there significant numbers of jobs in the national economy that the claimant can perform?

*Id.* at 724-25; *see also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Bustamante*, 262 F.3d at 953. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54.

## THE ALJ'S FINDINGS

The ALJ performed the sequential analysis. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the application date, February 25, 2014. Tr. 18. The

ALJ determined Plaintiff had the following severe impairments: asthma, pain syndrome variously diagnosed to include fibromyalgia and polyarthralgia, mental impairment (variously diagnosed as including somatic symptom disorder, alcohol use disorder, in sustained remission, amphetamine use disorder, in sustained remission, dependent personality disorder, post-traumatic stress disorder, and major depressive disorder). *Id.* The ALJ determined Plaintiff's impairments did not meet or equal a listed impairment. Tr. 19.

The ALJ determined Plaintiff had the RFC to perform a range of light work with the following additional restrictions: climbing of ladders, ropes, or scaffolds must be precluded entirely from work duties as assigned; within the assigned work area there must be no exposure to hazards such as machinery or heights; assigned work must be limited to simple 1 or 2 step tasks, which must be learned in 30 days or less by brief demonstrations and the tasks must have minimal change in the tasks as assigned; contact with supervisors, coworkers, and the general public must be limited to no more than occasional. Tr. 20-21.

The ALJ noted Plaintiff was 28 years old on the application date, has limited education, and is able to communicate in English. Tr. 28. The ALJ found Plaintiff has no past relevant work. *Id.* Based on her RFC, the ALJ determined Plaintiff was able to perform work as a garment sorter, laundry folder, or bottle line attendant at the light exertional level. Tr. 29. In the alternative, the ALJ determined that Plaintiff was able to perform work as an addresser/sorter, optical final assembler, and cutter paster at the sedentary exertional level. *Id.* As a consequence, the ALJ determined Plaintiff was not disabled. Tr. 30.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record.

42 U.S.C. § 405(g); *Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotation marks omitted). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).

When the evidence before the ALJ is subject to more than one rational interpretation, courts must defer to the ALJ's conclusion. *Batson*, 359 F.3d at 1198 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)). A reviewing court, however, cannot affirm the Commissioner's decision on a ground that the agency did not invoke in making its decision. *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006). Finally, a court may not reverse an ALJ's decision on account of an error that is harmless. *Id.* at 1055–56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## DISCUSSION

Plaintiff alleges the ALJ erred by (1) failing to properly consider Plaintiff's pseudoseizures; (2) failed to properly weigh medical opinion evidence concerning Plaintiff's rheumatological condition; (3) failed to properly consider "other medical source" opinion evidence concerning Plaintiff's mental limitations; and (4) failed to consider relevant VE testimony at step five of the sequential analysis.

### I. Pseudoseizures

Plaintiff contends that the ALJ erred by discounting Plaintiff's pseudoseizure disorder. As a preliminary matter, Plaintiff asserts that the ALJ entirely failed to account for Plaintiff's

pseudoseizures at steps two or three of the sequential analysis. However, at step two of the analysis the ALJ included "somatic symptom disorder" as one of Plaintiff's severe impairments. Tr. 18. Under the regulations, pseudoseizures are included under somatic symptom disorders. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(B)(6)(a). As for step 3, the ALJ expressly considered the "severity of the mental impairments, considered singly and in combination, do not meet or medically equal the criteria list of listings 12.04, 12.06, 12.07, and 12.08." Tr. 19. Listing 12.07 is the appropriate listing for pseudoseizures. 20 C.F.R. Pt. 404, Subpt. 2, App. 1, § 12.00(B)(6). Plaintiff does not assert that her pseudoseizure condition satisfies the requirements of 12.07 and so the Court does not consider that issue. On this record, the ALJ appropriately addressed Plaintiff's pseudoseizures at steps two and three.

More substantively, Plaintiff argues that the ALJ erred by rejecting the medical opinion evidence of treating neurologist Michael Steven Narus, D.O., concerning Plaintiff's pseudoseizures, as well as Plaintiff's own subjective symptom testimony. For the sake of clarity, the Court will address Plaintiff's subjective symptom testimony below before turning to Dr. Narus's opinion in the next section.

To determine whether a claimant's testimony is credible, an ALJ must perform a two-stage analysis. 20 C.F.R. § 416.929. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). At the second stage of the credibility analysis, absent evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of symptoms. *Carmickle v. Comm'r*, 533 F.3d 1155, 1160 (9th Cir. 2008).

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). An ALJ may use "ordinary techniques of credibility evaluation" in assessing a claimant's credibility, such as prior inconsistent statements concerning the symptoms, testimony that appears less than candid, or a claimant's daily activities. *Id.* "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (internal quotation marks and citations omitted).

In this case, Plaintiff testified that her seizures, along with her other impairments, prevent her from working. Tr. 44. Plaintiff testified that she had two or three seizures per week, lasting up to ten minutes at a time. Tr. 47. The seizures leave Plaintiff feeling exhausted and lifeless, with a "horrible headache." Tr. 48. Plaintiff testified that if she had a seizure while working she would have to go home and that if she experienced a seizure before work, she would have to call in sick. *Id.* It takes up to three days for Plaintiff to recover fully from a seizure. Tr. 52. Plaintiff testified that she is taking medication for the seizures, but that she still experiences seizures at least twice per week. Tr. 48. Plaintiff estimated that her seizures would result in her missing work "around 50% of the time." Tr. 51.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that her statements concerning the intensity, persistency, and limiting effects of the symptoms was not entirely consistent with the objective medical evidence and other evidence in the record. Tr. 25. Although Plaintiff testified at the hearing that she experienced multiple seizures per week, Plaintiff's medical records indicate that her seizures are much less frequent. Plaintiff reported that she had seizures as a child but that her

seizure disorder was cured by a prayer group when she was 12 years old and she was tapered off medication. Tr. 976. Plaintiff reported that she began experiencing seizures again in 2008, with a second seizure in 2014. *Id.*; *see also* Tr. 926 (Plaintiff reported a single seizure in 2008, with a second in 2014, and three more in 2015). Plaintiff had three seizures in August 2015, with a fourth in October 2015. Tr. 976. On December 8, 2015, Plaintiff's primary treating physician reported that Plaintiff was on medication and was "currently not having seizures," Tr. 1029, although a note from February 2016 indicates that Plaintiff had "some type of seizure" on December 19, 2015. Tr. 980. On May 3, 2016, Plaintiff reported to Dr. Narus that she had had two seizures in a row, one month prior. Tr. 983. On May 23, 2016, Plaintiff told her primary treating physician that she had had six seizures since her last visit. Tr. 1036. In June 2016, however, Plaintiff denied having seizures, headaches, or fainting. Tr. 1083. Plaintiff was evaluated from August 8 to 11, 2016, and was tapered off her medication and experienced seizures. Tr. 985. During that unmedicated period, Plaintiff "had at least 6 events." *Id.* On August 12, 2016, however, Plaintiff reported that she had gone up to two weeks without a seizure and estimated that she had experienced between five and ten seizures in the last four months. Tr. 926.

The record clearly indicates a seizure disorder and, as noted, the ALJ accepted pseudoseizures as a severe impairment as "somatic symptom disorder." However, Plaintiff's reports to her treatment providers indicate that she experiences the seizures much less frequently than she claimed in her hearing testimony. Tr. 23-24. Such prior inconsistent statements are a valid consideration in assessing the credibility of Plaintiff's subjective symptom testimony concerning her seizure disorder. On this record, the Court concludes that the ALJ provided clear and convincing reasons for discounting Plaintiff's testimony with respect to her pseudoseizures.

Finally, Plaintiff asserts that the ALJ erred by ignoring the vocational expert ("VE")'s testimony concerning the willingness of employers to hire someone with a seizure disorder. During the hearing, Plaintiff's attorney and the VE had the following exchange:

> Q: And if someone had a medical condition such as seizures and/or epilepsy, but we'll call it seizures for this where special precautions would need to be taken place in the workplace to protect them, you know from their head or the ground or even breathing or things like that, is that something that a competitive employer might frown about or be worried about having to accommodate?
>
> A: You know they're going to be—you know if the seizures are—if there's unpredictability with the seizures and they're uncontrollable with medication it's a huge liability for an employer. It's a workers' comp claim just screaming, so it's— it's a—it'd be difficult to even secure a job if that seizure activity were disclosed—
>
> Q: Okay.
>
> A:—due to the liability issue.

Tr. 58-59.

Under the regulations, an individual is not disabled if her residual functional capacity and vocational abilities make it possible for her to do with which exists in the national economy, but she remains unemployed due to "the hiring practices of employers" or the fact that the individual "would not actually be hired" to do work she could otherwise do. 20 C.F.R. § 416.966(c)(3), (7). The VE's testimony concerning the reluctance of employers to hire an individual with a seizure disorder is not probative of whether work consistent with Plaintiff's RFC existed in significant numbers in the national economy. The ALJ did not, therefore, err in failing to discuss or account for that testimony.

## II. Medical Opinion Evidence

Plaintiff asserts that the ALJ erred by rejecting the opinion of treating neurologist Dr. Narus with respect to Plaintiff's pseudoseizure disorder; treating physician Richard Daniel Heyerman,

M.D., concerning Plaintiff's physical limitations; and Lark L. Lovejoy, M.S., Q.M.H.P., L.P.C., concerning Plaintiff's mental limitations.

The ALJ is responsible for resolving conflicts in the medical record. *Carmickle*, 533 F.3d at 1164. "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant[.]" *Turner v. Comm'r*, 613 F.3d 1217, 1222 (9th Cir. 2010) (internal quotation marks and citation omitted). An ALJ may reject the uncontradicted medical opinion of a treating or examining physician only for "clear and convincing" reasons supported by substantial evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). An ALJ may reject the contradicted opinion of a treating or examining doctor by providing "specific and legitimate reasons that are supported by substantial evidence." *Id.*

### A. Dr. Narus

Dr. Narus treated Plaintiff for her peudoseizures. Tr. 935. In his Seizure Medical Source Statement, Dr. Narus indicated that Plaintiff suffered from pseudo-seizures during which she would lose consciousness. *Id.* Dr. Narus reported that Plaintiff experienced seizures twice per week on average, particularly in the evenings, and that stress or exertion could precipitate a seizure. Tr. 935-36. In the aftermath of a seizure, Plaintiff experiences confusion, paranoia, severe headaches, muscle strain, irritability, exhaustion, and difficulty communicating, lasting several hours. Tr. 936. Dr. Narus reported that Plaintiff is "wiped out" for two days after experiencing a seizure. *Id.* Dr. Narus opined that Plaintiff was incapable of even "low stress" work and that if placed in a competitive job "she would have [a] seizure." *Id.* Dr. Narus believed that Plaintiff could sit and stand or walk for less than two hours in and eight-hour workday and that she could only rarely lift less than ten pounds. Tr. 937. Dr. Narus believed that Plaintiff would frequently

require time away from work or unscheduled breaks as a result of her seizure disorder and opined that Plaintiff "is unable to work permanently." Tr. 938. In his Physical Medical Source Statement, Dr. Narus opined repeatedly that Plaintiff is "totally and permanently disabled," "can not work at all," and "is unable to work ever in the future." [3] Tr. 1116-18.

The ALJ assigned "little weight" to Dr. Narus's opinion, finding that it was "wholly inconsistent with office visit notes documenting infrequent pseudo-seizure activity and normal neurological examination throughout the claimed period of disability." Tr. 26. As discussed in the previous section, the medical records indicate that the frequency of Plaintiff's seizure episodes was substantially less than reported by both Plaintiff and Dr. Narus. Some of the contradictory medical records are Dr. Narus's own treatment notes. Tr. 976 (November 25, 2015, reporting a single seizure in 2008, a second in 2014, and three seizures in August 2015, with a fourth in October 2015); 980 (Plaintiff had "some type of 'seizure' in the MRI scanner on 12/19/15."); 983 (May 3, 2016, reporting two seizures in a row approximately one month prior).

Such inconsistencies constitute a clear and convincing reason for not relying on a physician's medical opinion. *Bayliss*, 427 F.3d at 1216. Although some records indicate more frequent seizures than others, the ALJ reviewed the longitudinal record and reasonably concluded that it indicated seizures much less frequent than Dr. Narus opined. Even if the record is susceptible to more than one interpretation, the Court must defer to the ALJ's reading, if it is reasonable. *Batson*, 359 F.3d at 1198. On this record, the Court concludes that the ALJ did not err by assigning reduced weight to Dr. Narus's opinion concerning Plaintiff's pseudoseizures.

---

[3] Dr. Narus's opinion concerning the ultimate issue of disability is offered repeatedly, and somewhat unhelpfully, in lieu of an opinion concerning various categories of functional limitation. Tr. 1116-18. As the ALJ notes, Tr. 27, the determination of disability is reserved to the Commissioner and so Dr. Narus's opinion on that point is not entitled to any special significant weight. 20 C.F.R. § 416.927(d).

### B. Dr. Heyerman

Dr. Heyerman was Plaintiff's treating physician. On August 31, 2016, Dr. Heyerman submitted a Physical Medical Source Statement concerning Plaintiff's rheumatoid arthritis. Tr. 972-75. Dr. Heyerman indicated that Plaintiff suffers from constant multi-joint pain that waxes and wanes and worsens with activity. Tr. 972. In terms of clinical findings and objective signs, Dr. Heyerman reported that Plaintiff suffers from tender, swollen joints. *Id.* Dr. Heyerman opined that Plaintiff could sit or stand for thirty minutes at a time and that, with prolonged sitting, Plaintiff's legs should be elevated thirty degrees due to swelling in her joints. Tr. 973-74. Dr. Heyerman indicated that Plaintiff could occasionally lift and carry less than ten pounds, but never ten or more pounds and that Plaintiff could never twist, stoop, crouch/squat, climb stairs, or climb ladders. Tr. 974. Dr. Heyerman checked a box indicating that Plaintiff had significant limitations with reaching, handling, or fingering, but wrote "N.A." in the section where he would indicate the percentage of time during a workday that Plaintiff could use her hands, fingers, and arms. *Id.* Dr. Heyerman believed Plaintiff would be "off task" for 25% or more of a typical workday and that she would be absent four or more days per month as a result of her impairments. Tr. 975. Dr. Heyerman opined that, although Plaintiff's impairments were likely to produce good days and bad days, she would be incapable of even "low stress" work. *Id.*

The ALJ found the "extreme functional limitations outlined in [Dr. Heyerman's] checkbox assessment" were unsupported by his own treatment notes, as well as those of other providers. Tr. 27. "There is little to no objective evidence supporting limitations assessed which suggests Dr. Heyerman based this assessment on the claimant's self-reported physical capabilities, reviewed and completed at an office visit on August 31, 2016." *Id.* Consequently, the ALJ gave "more

weight" to Dr. Heyerman's treatment notes and "little to no weight to Dr. Heyerman's opinion as stated in his medical source statement." *Id.*

In particular, the ALJ noted the lack of evidence for edema or swelling in Dr. Heyerman's treatment notes. Tr. 27. Although Dr. Heyerman's notes indicate that Plaintiff was positive for arthralgias, *see, e.g.,* Tr. 1039, 1041, there is no mention of edema or the joint swelling referenced in his function report. Similarly, other medical sources indicate no edema or swelling. *See, e.g.,* Tr. 750 ("She exhibits no edema."); 860 ("No clubbing, cyanosis or edema."); 864 (same); 868 (same); 1053-54 (no clubbing, cyanosis, or edema found during rheumatology consultation); 1056-57 (same); 1083 ("No abnormal edema" in extremities during examination); 1105 ("No lower extremity edema appreciated," and "exhibits no edema."); 1113 ("Negative for joint swelling" during examination).

"Incongruity" between a physician's questionnaire responses and the medical records constitutes a specific and legitimate reason for rejecting the physician's opinion concerning the individual's limitations. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). On this record, the Court concludes that the ALJ provided an adequate reason for assigning reduced weight to Dr. Heyerman's function report.

Finally, Plaintiff argues that the ALJ erred by failing to explicitly consider the factors provided in 20 C.F.R. § 416.927 to determine the weight to be given to a treating physician's opinion, citing *Trevizo v. Berryhill*, 871 F.3d 664 (9th Cir. 2017). These factors include the length of the treatment relationship and the frequency of examination, the opinion's supportability, the opinion's consistency, and the physician's specialization, if any. 40 C.F.R. § 416.927(c)(2)-(6). Although these factors must be considered, the ALJ is not required to specifically address each one. *See, e.g., Kelly v. Berryhill*, 732 F. App'x 558, 562 n.4 (9th Cir. 2018) (in the context of 20

C.F.R. § 404.1527(c), the ALJ "is not required to make an express statement that she considered all the factors outlined," so long as there is some indication that the factors were considered) (internal quotation marks omitted); *Harris v. Colvin*, 584 F. App'x 526, 527 n.1 (9th Cir. 2014) ("Not every factor for weighing opinion evidence will apply in every case.") (internal quotation marks and citation omitted, alterations normalized).

In this case, the ALJ did not explicitly mention each of the factors, but instead acknowledged Dr. Heyerman's treating physician relationship with Plaintiff and expressly cited and discussed multiple treatment notes covering nearly a year. Tr. 27. The ALJ also credited Dr. Heyerman's treatment notes over his function report. *Id.* On this record, the Court concludes there is a sufficiently clear indication that the ALJ considered the relevant factors when weighing Dr. Heyerman's opinion.

### C. LPC Lovejoy

Unlike Dr. Narus and Dr. Heyerman, Ms. Lovejoy is considered an "other medical source," and so different standards are applied for consideration of Ms. Lovejoy's opinion. While opinions from non-acceptable medical sources may not be given controlling weight, their opinions may be used in determining the severity of the claimant's impairments and how it affects the claimant's ability to work. SSR 06-03p, *available at* 2006 WL 2329939, at *3. The ALJ may reject the competent testimony of "other medical sources" for reasons "germane to each witness." *Molina*, 674 F.3d at 1111. Germane reasons may include a finding that the testimony contradicts the witness's own earlier testimony or that of other medical specialists, or that the witness was biased. *Dale v. Colvin*, 823 F.3d 941, 944-45 (9th Cir. 2016).

On October 5, 2016, Ms. Lovejoy submitted a letter describing Plaintiff's mental health limitations. Tr. 1019-21. Ms. Lovejoy diagnosed post-traumatic stress disorder and bipolar II

disorder, current episode depressed, severe. Tr. 1019. Ms. Lovejoy described a number of symptoms and limitations Plaintiff experiences as a result of her mental health conditions. Tr. 1019-21. Ms. Lovejoy also submitted a Mental Medical Source Statement in which she opined that Plaintiff was "unable to meet competitive standards" in most of the relevant areas. Tr. 1047-52. Ms. Lovejoy believed that Plaintiff's symptoms would result in four or more absences per month. Tr. 1051.

The ALJ did not discuss Ms. Lovejoy's opinion in formulating Plaintiff's RFC. The Commissioner contends that the failure to address Ms. Lovejoy's opinion is harmless because the ALJ otherwise evaluated Plaintiff's mental impairments and concluded that they would not prevent her from performing simple work. In similar circumstances, the Ninth Circuit has held that the failure to discuss or give reasons for discounting the opinion of a treating therapist was not harmless error "because we cannot conclude that 'no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.'" *Talley v. Astrue*, 400 F. App'x 167, 169 (9th Cir. 2010) (quoting *Stout*, 454 F.3d at 1056).

For the same reason, this Court cannot conclude that the failure to discuss or provide reasons for discounting Ms. Lovejoy's opinion was harmless.

### III. Step Five

The ALJ determined that Plaintiff has moderate limitations in concentration, persistence, and pace. Tr. 19. In the VE hypothetical, the ALJ translated that limitation into a restriction that "the assigned work must be limited to simple tasks of one or two steps which can be learned within 30 days on the job or through a brief demonstration." Tr. 55-56. Plaintiff argues that this RFC and VE hypothetical fails to capture a moderate limitation in concentration, persistence, and pace.

In formulating Plaintiff's RFC, the ALJ found that "[m]ental health limitations due to identified severe mental medically determinable impairments, preclude the performance of complex skilled tasks." Tr. 24. "Appropriate limitations, which reflect the moderate degree of limitation as established in the record must limit the claimant to simple tasks with additional limitations as described above in the residual functional capacity assessment." *Id.* In support of that conclusion, the ALJ relied on the opinions of reviewing psychologists Bill Hennings, Ph.D., and Irmgard Friedburg, Ph.D. Tr. 26.

In *Stubbs-Danielson v. Astrue*, 539 F.3d 1169 (9th Cir. 2008), the Ninth Circuit held that "an ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the evidence is consistent with restrictions identified in the medical testimony." *Id.* at 1173-74; *see also Vanblaricum v. Colvin*, No. 6:13-CV-00106-BR, 2014 WL 991834, at *10 (D. Or. Mar. 13, 2014) (a restriction to "unskilled work of routine, repetitive tasks with simple instructions" and familiar detailed tasks was sufficient to capture a moderate limitation in concentration, persistence, and pace when that limitation was supported by the opinion of a non-examining psychologist).

In this case, both Dr. Hennings and D. Friedburg assessed moderate limitations in Plaintiff's ability to carry out detailed instructions and her ability to maintain attention and concentration for extended periods. Tr. 72, 86. In functional terms, both reviewing psychologists opined that Plaintiff "is able to maintain attention and concentration for tasks of 1-2 steps and can maintain this level of work for a normal 8 hour work day or 40 hour work week." Tr. 72, 86. The ALJ explicitly relied on the opinions of the non-examining psychologists in translating Plaintiff's mental limitations into concrete functional terms. Consistent with *Stubb-Danielson*, the

ALJ's translations of Plaintiff's limitations was adequate to capture her deficiencies in concentration, persistence, and pace in both the RFC and the VE hypothetical.

## IV. Remand

In this case, the Court has determined that the ALJ's opinion contains non-harmless errors and so must determine whether remand should be for further proceedings or for award of benefits. The decision whether to remand for further proceedings or for the immediate payment of benefits lies within the discretion of the court. *Triechler v. Comm'r*, 775 F.3d 1090, 1101-02 (9th Cir. 2014). A remand for award of benefits is generally appropriate when: (1) the ALJ failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed, there are no outstanding issues that must be resolved, and further administrative proceedings would not be useful; and (3) after crediting the relevant evidence, "the record, taken as a whole, leaves not the slightest uncertainty" concerning disability. *Id.* at 1100-01 (internal quotation marks and citations omitted); *see also Dominguez v. Colvin*, 808 F.3d 403, 407-08 (9th Cir. 2015) (summarizing the standard for determining the proper remedy). The second and third prongs of the test often merge into a single question: Whether the ALJ would have to award benefits if the case were remanded for further proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1178 n.7 (9th Cir. 2000).

In the present case, the ALJ erred by failing to address the opinion of Plaintiff's treating therapist Lark Lovejoy concerning Plaintiff's mental limitations. Although Ms. Lovejoy assessed major limitations with respect to numerous areas of mental functioning, Tr. 1049-51, the Commissioner has identified evidence in the record suggesting a greater degree of function than indicated by Ms. Lovejoy. *See, e.g.,* Tr. 928 (Plaintiff "reports anxiety and depression are well controlled,"); 1046 ("Depression with anxiety—controlled with Effexor and Xanax,"); Tr. 1083 (Plaintiff reports no psychiatric complaints, denies anxiety, depression, and bi-polar disorder). The

Court concludes that the reconciliation of Ms. Lovejoy's opinion and the other evidence in the record is a matter that should be addressed, in the first instance, by the ALJ and so this matter is remanded for further proceedings.

## CONCLUSION

Pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner is REVERSED and REMANDED for further proceedings. On remand, the ALJ should:

Consider the opinion of Plaintiff's treating therapist Lark Lovejoy and either credit that opinion as true or provide legally sufficient reasons for discounting it.

DATED this 17th day of June, 2019.

ANN AIKEN
United States District Judge